UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY WISEBLOOD,<br><br>Plaintiff,<br><br>v.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, et al.,<br><br>Defendants. | No. 2:18-cv-03082-KJM-CKD<br><br><br><br>ORDER |

In this insurance coverage case, defendant moves to dismiss plaintiff's complaint based on the language of the policy at issue. For the reasons set out below, the court GRANTS defendant's motion.

I.     BACKGROUND

In 2011, plaintiff Joy Wiseblood purchased a "Long-Term Disability Income Insurance Policy" (the "Policy") from defendant Mutual of Omaha Insurance Company. Opp'n, ECF No. 14, at 7[1]. Plaintiff's policy has a "Benefit Period" of 67, meaning that the policy provides total disability benefits to the insured until she turns 67 years old. *See* Mot., ECF No. 11, at 11; Compl. Ex. A, ECF No. 1-1, at 39; Opp'n, Ex. 1 ("Policy) at 28 ("Benefit Period To

---

[1] Citations to page numbers refer to the ECF pagination, not the document's internal pagination.

1

Age 67")[2]. The policy also includes a "Mental or Nervous Disorder Limitation," which states: "Benefits payable for Mental or Nervous Disorders are limited to a lifetime maximum of 24 months." Policy at 11.

In 2015, defendant sent plaintiff an addendum to her existing policy, entitled Rider ONV1M (the "Rider"). Opp'n at 7–8; *Id.*, Ex. 3 at 32. According to defendant, this Rider was sent in an effort to comply with California Insurance Code section 10144.55, enacted through Assembly Bill 402, Chapter 550, which required short-term disability income insurance, that is policies with a duration of two years or less, to provide coverage for disability caused by severe mental illness for the same duration as all other disabilities. *See* Mot. at 14 (citing Cal. Ins. Code § 10144.55). The Rider included a cover letter stating: "[i]n compliance with AB 402 Chapter 550, we have added Rider ONV1M to your coverage ID #890416-89. The rider . . . [i]s a state required rider and may not affect you . . . . Please read the enclosed rider carefully and attach it to your coverage." *Id.* at 15; Ex. 3 at 32. The Rider was entitled "Severe Mental Illness Benefits Rider" and stated:

> This rider is made a part of your policy or certificate to which it is attached. It is subject to all parts of your policy or certificate not in conflict with this rider. In the event of a conflict between this rider and any other provisions of your policy or certificate, this rider will control. If your disability income insurance policy or certificate and/or any rider attached to it: (a) has a benefit period of 24 months or less; and (b) limits benefits payable for mental or nervous disorders to a lifetime maximum of 24 months or less; the following changes are made:
>
> 1. Any such mental or nervous disorder lifetime maximum benefit limitation will not be applied to benefits payable for a severe mental illness.
>
> 2. We will pay benefits for disability caused by a severe mental illness on the same basis as any other covered sickness.

Opp'n, Ex. 2 ("Rider") at 30.

---

[2] As plaintiff points out, the photocopies of the policy and rider attached to the complaint are virtually illegible. Accordingly, the court references the versions attached to defendant's opposition. *See* Opp'n, Exs. 1–3.

2

In June 2016, plaintiff filed a claim for disability benefits with defendant, based on a diagnosis of major depressive disorder and anxiety, which prevented her from performing her job. Opp'n at 9. Defendant paid the claim for two years but stopped in May 2018, based on the 24-month limitation on claims for mental or nervous disorders. *Id.* at 10. Plaintiff contacted defendant and explained she believed the Rider overrode the 24-month limitation in the policy. *Id.* Defendant refused to continue paying her benefits, arguing the Rider only applied to policies with benefit periods of 24 months or less, whereas plaintiff's policy has a benefit period of 67 years. *See id.*; Mot. at 12. On October 12, 2018, plaintiff filed a complaint against defendant in Sacramento County Superior Court in which she pleaded claims for declaratory relief, breach of contract, breach of the insurers' duty of good faith and fair dealing, and violation of California Business & Professions Code section 17200. Compl. at 6–9. Defendant removed the action to federal court on the basis of diversity jurisdiction. Notice of Removal, ECF No.1, at 3. Defendant now moves to dismiss plaintiff's complaint for failure to state a claim on which relief may be granted, arguing all of plaintiff's claims fail as a matter of law. *See generally* Mot. Plaintiff opposes, ECF No. 14, and defendant has responded, ECF No. 18. The court held a hearing on March 8, 2019, and resolves the motion here.

II.     LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pled factual allegations as true and construe the

complaint in plaintiff's favor. *Id.* (citing *Twombly*, 550 U.S. at 555); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citations omitted).

If a plaintiff requests leave to amend a claim subject to dismissal, the federal rules mandate that the court "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Before granting leave, a court considers any potential bad faith, delay, or futility regarding the proposed amendment, and the potential prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citation omitted).

III.  DISCUSSION

    A.  General Rules of Interpretation

Because this is a diversity action, the court applies the substantive law of California and federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under California law, contract interpretation is a question of law unless the interpretation depends on the credibility of extrinsic evidence. *Legacy Vulcan Corp. v. Superior Court*, 185 Cal. App. 4th 677, 688 (2010). Courts interpret insurance policies utilizing the same interpretation rules as for other contracts, with the aim of effectuating the contracting parties' mutual intention at the time of the contract's formation. *Id.* Courts ascertain that intention from the parties' writing and also consider the circumstances surrounding the contract's formation and the contract's subject matter. *Id.* In doing so, courts read the contract as a whole and "interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation." *Id.* "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Unless the parties use words in a technical sense or the words have acquired a special meaning by usage, courts interpret words in accordance with their plain meaning, as laypeople ordinarily would. *Legacy Vulcan Corp.*, 185 Cal. App. 4th at 688. If the contract's language is clear and involves no ambiguities, the plain meaning governs. *Id.* "Policy language is ambiguous if it is susceptible of more than one reasonable interpretation in the context of the policy as a whole. Whether policy language is ambiguous is a question of

4

law. . . . Any ambiguity must be resolved in a manner consistent with the objectively reasonable expectations of the insured in light of the nature and kind of risks covered by the policy." *Id.* (citing *State Farm General Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 283 (2009)).

The Ninth Circuit has summarized these rules of contract interpretation as requiring a three-step process:

> [1] The first step is to examine the clear and explicit meanings of the terms as used in their ordinary and popular sense. In assessing the terms' meanings, we may not take individual terms out of context: Language in a contract must be construed in the context of that instrument as a whole . . . and cannot be found to be ambiguous in the abstract. Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.
>
> [2] If (and only if) a term is found to be ambiguous after undertaking the first step of the analysis, the court then proceeds to the second step and resolves the ambiguity by looking to the expectations of a reasonable insured. Under California law, an insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable.
>
> [3] Finally, if the ambiguity still remains, it is construed against the party who caused the ambiguity to exist. In the insurance context, this is almost always the insurer, as the California Supreme Court has held that ambiguities are generally resolved in favor of coverage, and that the courts are to generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.

*In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 925–26 (9th Cir. 2000) (internal citations and quotation marks omitted).

B. <u>Breach of Contract Claim</u>

Defendant argues the Rider clearly does not apply to plaintiff's policy, and all of plaintiff's claims should be dismissed because they all depend on the premise that plaintiff's interpretation of the Policy and the Rider is correct. Mot. at 11–13. Specifically, defendant contends that, because the Rider only applies to a disability income insurance policy that "(a) has a benefit period of 24 months or less," the Rider clearly does not affect plaintiff's policy, which has a benefit period of "to age 67." *See* Reply at 6–7. In opposition, plaintiff argues her policy has a "maximum benefit period of 24 months for mental or nervous disorders," so it does, in fact, have "a benefit period of 24 months or less," even though the benefit period for other causes of

disability is until age 67.  *See* Opp'n at 12.  Thus, the parties' dispute is over the meaning of "benefit period" in the Rider, within the context of the Policy.  The question for the court is whether "benefit period" has a "clear and explicit meaning" as used in its "ordinary sense," taking into account the "context of the [policy] as a whole."  *In re K F Dairies, Inc. & Affiliates*, 224 F.3d at 925–26.  If so, the inquiry need not proceed any further.  *Id.*

There are three instances in the policy where the term "benefit period" is used,[3] and each compels the same conclusion: the policy's benefit period is not two years or less.  First, the policy definitions section defines "Benefit Period," on the first substantive page as:

> [T]he maximum length of time Total Disability benefits, Residual Disability benefits or any combination of these benefits is payable. The benefit period begins on the first day benefits become payable after expiration of the Elimination Period.  The benefit period ends after benefits have been payable for the duration of time shown on the policy schedule.

Policy at 6.  Second, the page titled "Policy Schedule," lays out the details of plaintiff's policy, including the policy number, policy date, and the initial premium.  *See* Policy at 28.  It also states "BENEFIT PERIOD TO AGE 67.  SEE TRANSITION TABLE ON NEXT PAGE."  Third, on the page entitled "Benefit Period [¶] Transition Table," referenced by the policy schedule, a table shows the actual "Benefit Period" in months based on the benefit period listed in the policy schedule and the age at which the insured begins applying for benefits, given certain limitations in the policy.  *Id.* at 27.  For example, if the policy has a listed benefit period of "5 Years," the insured will only actually have a five-year "Benefit Period" if she applies for benefits before age 65.  *Id.*  Once she turns 65, the "Benefit Period" gradually reduces each year, until age 67 at which point the "Benefit Period" stays at 24 months.  *Id.*  Therefore, the "Benefit Period" shown

---

[3] Though inconsequential to this discussion, "benefit period" also appears several other times in the policy, for example, in Section A, which appears to be Ms. Wiseblood's application for the instant policy to replace her then-existing disability insurance.  Policy at 19.  Under "Other Coverage and Replacement Information" someone has handwritten the insurance Wiseblood had at the time, which she sought to replace, and under "benefit period" someone has written "67." *Id.*  It also appears under the heading "Total Disability Benefits," where the policy explains, "Benefits are payable while you remain Totally Disabled for as long as the Benefit Period.  When disability begins after Age 56, the Benefit Period may gradually decrease as shown in the policy schedule Transition Table."   Policy at 8.

1 for a policy with a listed benefit period of "To [Age] 67" is "To [Age] 67" until the insured
2 reaches the age of 60, at which point it gradually decreases until age 67, when it becomes 24
3 months, or two years. *Id.* Plaintiff was 56 years old at the time she filed her disability claim, so
4 her "Benefit Period" as defined by the "Transition Table" was "To [Age] 67" at that time and at
5 the time she filed her complaint. *See id.*; *see also* Opp'n at 7 ("Ms. Wiseblood is a 56-year-old
6 woman . . . ."). Thus, in every instance in which "Benefit Period" is mentioned substantively in
7 the Policy, it is defined as "To Age 67."

8 Plaintiff ignores the particular language of the Policy and instead describes it
9 generally as "provid[ing] coverage for both disabilities caused by physical conditions (to age 67)
10 and for mental or nervous disorders (for 24 months)." Opp'n at 6. While this much is true, the
11 language of the Rider also makes clear it only applies to a "disability income insurance policy"
12 that "(a) has a *benefit period* of 24 months or less." Rider at 30 (emphasis added). Nowhere in
13 the policy is the mental or nervous disorder limitation referred to as a "benefit period." In other
14 words, as defendant argues, plaintiff is "conflating the Policy's insuring or coverage provisions
15 with a limitations provision." Reply at 6 (citing *Van Ness v. Blue Cross of Cal.*, 87 Cal. App. 4th
16 364, 373–74 (2001) ("Insurance policies contain two parts: (1) the insuring agreement which
17 defines the type of risks covered under the policy; and (2) the exclusions, which remove coverage
18 for certain risks which initially fall within the insuring clause.")). As defendant explains, the
19 "'Mental or Nervous Disorder Limitation' is found within the 'Exclusions and Limitations'
20 section of the Policy and is not part of the insuring provisions"; therefore, "[i]ts effect is to limit
21 the scope of benefits that would otherwise be payable for a mental or nervous disorder." *Id.*;
22 Policy at 11 ("EXCLUSIONS AND LIMITATIONS . . . . Benefits payable are limited for the
23 following conditions: . . . . Mental Or Nervous Disorder Limitation . . . ."). "Because [the
24 limitation] is not an insuring provision, it does not contain a separately defined 'benefit period.'"
25 Reply at 6.

26 Plaintiff's interpretation is further discredited by the wording of the Rider, which
27 states it applies to a policy that: "(a) has a benefit period of 24 months or less; and (b) limits
28 benefits payable for mental or nervous disorders to a lifetime maximum of 24 months or

7

less . . . ." Rider at 30.  If plaintiff's interpretation of (a) were correct, then (b) would be redundant.  *See* Reply at 7.  If the 24-month limitation is the same as a 24-month "benefit period," as plaintiff argues, then the Rider need only state it applies to a policy that "limits benefits payable for mental or nervous disorders to a lifetime maximum of 24 months or less."  As noted, under California law, courts are required to interpret a contract based on a reading of the document as a whole, "with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless."  *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011) (citations omitted); *see also* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *cf. Sandler v. Montefiore Health Sys., Inc.*, No. 16-CV-2258 (JPO), 2018 WL 4636835, at *15 (S.D.N.Y. Sept. 27, 2018) (rejecting defendant's interpretation of contract in part because it "violates [the] canon against superfluities").  Following this rule, the court must interpret the Rider in the context of the contract to which it attaches, in such a way as to give meaning to each provision of the document as a whole.  The fact that plaintiff's interpretation of "benefit period" renders clause (a) meaningless further supports defendant's argument that the contract language is not "reasonably susceptible" to plaintiff's interpretation.  *See* Reply at 7 (citing *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524 (2003) ("When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party.  If it is not, the case is over.").

For the foregoing reasons, the court finds that the language of the Rider and the Policy was clear and unambiguous.  Plaintiff's policy, which had a "benefit period" of up to age 67, was not altered by the Rider, which only applied to policies with a benefit period of 24 months or less.  Therefore, the 24-month limitation on benefits for severe mental illness applies to her claim.  Defendant correctly rejected plaintiff's claim for benefits beyond 24 months for total disability caused by her mental illness.  Plaintiff's claim for breach of contract based on defendant's denial of benefits cannot survive as a matter of law, and will be DISMISSED.

The court reaches this conclusion without reliance on the cover letter attached to the Rider, the admissibility of which is disputed by the parties. *See* Reply at 7.

### C. Plaintiff's Other Claims

Because defendant applied the clear meaning of the contract language when it rejected plaintiff's claim, none of plaintiff's other claims can survive as a matter of law.

#### 1. Breach of Covenant of Good Faith and Fair Dealing

In California, an insurer has a duty to "deal fairly and in good faith with its insured," which means it must "act fairly and in good faith in discharging its contractual responsibilities." *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573–74 (1973). "[T]he essence of the implied covenant of good faith and fair dealing is that [t]he insurer must refrain from doing anything that will injure the right of the insured to *receive the benefits of the [insurance] agreement*, the terms and conditions of which define the duties and performance to which the insured is entitled." *Brandwein v. Butler,* 218 Cal. App. 4th 1485, 1514–15 (2013) (alterations and emphasis in original) (internal quotation marks omitted) (citing 2 Witkin, Summary of Cal. Law Insurance § 240 at 355 (10th ed. 2005)). "[T]here is no cause of action for breach of the covenant of good faith and fair dealing when no benefits are due." *Id.* (citations omitted).

Because the court finds plaintiff has not adequately pleaded a breach of the contract, plaintiff's claim for bad faith also cannot survive as a matter of law. Defendant denied plaintiff benefits based on the plain reading of the Rider and the Policy, so no benefits were improperly denied. As such, plaintiff does not have a cause of action for a breach of the covenant of good faith and fair dealing and the claim must also be dismissed.

#### 2. Violation of Business & Professions Code § 17200 & Declaratory Relief Claims

Plaintiff's claim for a violation of Business & Professions Code section 17200 and claim for declaratory relief also cannot stand as a matter of law because each is based on defendant's denial of benefits as a result of its interpretation of the Rider and Policy language. *See* Compl. at 9.

////

## IV. LEAVE TO AMEND

All of plaintiff's claims depend on plaintiff's interpretation of the Policy as the correct interpretation. Because the court finds that, as a matter of law, defendant's interpretation of the contract is correct, no amendment can cure the complaint's deficiencies. At hearing, plaintiff asserted that, if given leave to amend, she could state a cognizable claim for negligent infliction of emotional distress arising out of defendant's act of sending the "misleading" Rider. However, plaintiff could neither explain the basis for such a claim, nor cite any authority that would lead the court to believe such a claim is cognizable. Therefore, leave to amend is DENIED as futile. *See Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (affirming denial of leave to amend where amendment would be futile because "any such cause of action could be disposed of by summary judgment"); *Mohamed v. AMCO Ins. Co.*, No. 13-0958 SC, 2013 WL 1739477, at *5 (N.D. Cal. Apr. 22, 2013) (denying leave to amend because "the Court's findings as to the Policy's interpretation are made as a matter of law [so] Plaintiffs may not re-plead [the claim] based on the same legal theory dismissed" (citation omitted)).

## V. CONCLUSION

The motion to dismiss is GRANTED and the case is DISMISSED.

This order resolves ECF No. 11 and the parties' stipulation of dismissal as to plaintiff's declaratory relief claim at ECF No. 16, which is now moot.

The Clerk is directed to CLOSE the case.

IT IS SO ORDERED.

DATED: July 18, 2019.

_____
UNITED STATES DISTRICT JUDGE